We have three argued cases today. The first is number 232320, Wilco Marsh Buggies and Draglines, Inc. v. Weeks Marine, Inc. Ms. Addy. Good morning, Your Honors. This case turns on two patent law errors. First, the improper application of anticipation. The Mudmaster references require combining documents from different machine models and different times. The Harada and Zong references both require modification, which is improper on anticipation. So why don't we start with Mudmaster? And I understand that there were at least evidence of sales both in 1980 and 1993. Is that accurate? That's correct. So, if we were to focus on the 1993 sale, what do you think would prevent an on-sale bar in this instance? Two things at least, Your Honor. First of all, the 1993 sale was not presented as an on-sale bar at the lower court. So argument about that up here is improper. But secondly... That's not quite true. It was presented in the motion for reconsideration, correct? It was mentioned, I think, in an offhanded way, but it wasn't presented as a separate argument. Well, let's assume that it was presented as a separate argument in the motion for reconsideration. You responded to that with a PowerPoint presentation. I didn't see anything in the PowerPoint presentation which objected to the 1993 sale as having been an on-sale bar for whatever features were in the 1993 machine. Am I wrong about that? You're not wrong. We didn't object to that. However, we did set forth evidence and it is hotly disputed as to whether that 1993 machine has a chassis. And the judge recognized that in his decision. And Weeks' attorney admitted that you can't see the chassis in the 1980 machine, but the parties dispute this in the 1993 machine. However, that doesn't overcome the problem that the 1993 machine has to look at other documents as well to disclose all the features of the prior art. Well, Hudson testified that there was a chassis, correct? That's correct. And the question is whether Bennett contradicted that, thereby raising a genuine issue of material fact? That's correct, Your Honor. Hudson testified about three different locations on the 1993 machine being a chassis. He testified about the trunnion support, about the ladder frame, about the pipes underneath the trunnion support, and I think he settled on the trunnion support. Mr. Bennett said that there was no chassis on the 1993 or the 1980 machine, and that's in his expert report and in his deposition where he explained that there's no reference to the trunnion support being the frame of the machine. But he also testified that there has to be a chassis, right? No, Your Honor. He testified that something has to support what's above it, but he didn't testify that that support has to be a chassis. And when you look at the claim limitations, the claim limitations require more. I'm confused. What's the difference between a support and a chassis? Well, the court construed chassis as the supporting frame of a vehicle exclusive of the body or housing. And the claims require that the chassis ... Didn't the testimony indicate that there would be a supporting frame? So I recognize the testimony may not be as clean on the use of the precise word chassis, but didn't the testimony indicate that that claim construction of chassis would have been met? Maybe Mr. Hudson's testimony indicated that, but Mr. Bennett's testimony did not. Keep in mind the 1993 machine has no picture of what it's describing as trunnion supports, and you have to go to different undated documents to get these pictures. And there's no testimony that these other documents reflect the same machine, and these pictures, Mr. Bennett testified, he couldn't understand what was allegedly the supporting structure from these undated pictures. What was it that Hudson relied on, the pictures? Hudson relied on several different things at several different times, but in the end, he relied on the 1993 document that describes a trunnion support, and then he relied on, I believe he relied on an undated picture from another document. And we can't prove that those are the same machines. And Bennett would argue that that picture doesn't show a chassis. It has something circled in red, but we can't tell what it is. Well, I mean, there are two issues here. One, is Hudson's testimony sufficient to support a finding that there was a chassis by a jury? And the second question is whether, if there was such testimony, it was contradicted by Bennett. On the first point, are you disputing whether Hudson's testimony was sufficient to establish the existence of a chassis? When you look at what he relied on, yes, because he relied on multiple documents, and there's no proof that these documents have the same model number. In fact, they have different model numbers. So, for example... I don't recall you arguing that in the blue brief, did you? The model numbers? No, the inadequacy of the Hudson testimony. I think it goes without saying that we didn't concede the Hudson testimony. It never goes without saying. Where in the blue brief did you make that argument? That the Hudson testimony was insufficient to allow a jury to find a chassis? We didn't make that argument specifically. Okay, well, that's a problem. But you asked me, so I answered you. But we made the argument that there's a genuine issue of material facts. Because he was contradicted by Bennett. Correct, Your Honor. Okay. Correct, Your Honor. And since you guys took me directly into Mudmaster, is it worthwhile for me to talk about the exclusion of Bennett's testimony, or should we talk about the remain on the prior art? It's up to you, Your Honor. All right. I think it's important to know that Mr. Bennett's testimony, contrary to the district court's decision, was not contradictory. In fact, the district court improperly equated Mr. Bennett's identification of the problem in the prior art with a proposed solution. And neither expert has testified as to how to solve these problems in the prior art. Neither one. There's no testimony on that. Bennett's identification of these prior problems is consistent with his expert report. I can walk through these in the decision, but at, for example, Appendix 16, Bennett testified that Zong can't travel on land because Zong's suction pipe drags the ground. That's the same thing as he testified in his report. Same is true with Harada. He testified about the problems with having the spuds drag the ground. Do you agree that if we were to affirm with respect to Mudmaster, for example, we don't have to reach the grounds related to Zong or Harada? That's correct, Your Honor. You would have to find that none of the prior art anticipated. And as I mentioned, Zong and Harada require modification, so that in and of themselves kicks that out. We can discuss further. But Mudmaster requires improper combination, regardless of whether you look at the 1980 document or you look at the 1993 document, which would require combination back into these undated documents and the 1980 document as well. How does Mr. Binkley's testimony fit into all of this as well? Well, Your Honor, Mr. Binkley's testimony is additional evidence that supports the fact that you can't, that number one, there's nobody with personal, that was around in 1980 that could testify as to what's on the 1980 machine that was sold. He started in 1987 and he testified that there were different model numbers on the 1980 machine and the 1993 machine, and that's at Appendix 1818. He also testified that the assembly instructions for the 1980 machine, if there were any which were not found, quote, probably would have been different from those in the 1993 machine, and that's at Appendix 1817. My understanding, though, of that testimony was he was saying they would be different because they were 1993 instructions, but there were follow-up questions indicating whether or not the substance of the instructions would be different, and my understanding was he didn't think that they would be different, they'd be similar or something like that. But he has no personal knowledge to know whether they would be similar. He's making a guess because they don't exist or they were not disclosed. In addition, regardless, the court flipped the burden of proof in requiring, in allowing the use of the 1993 document. For example, the court said that Wilco didn't do enough to convince the court of the issue of fact with respect to the 1993 document, and that's at Appendix 11. But that's not Wilco's burden, Your Honor. The court failed to consider Wilco's evidence, and that's specifically Bennett's testimony that the Mudmaster 1993 had no chassis at Appendix 2484 to 90. So even if combined, Mudmaster does not anticipate. I'll turn for the remainder of my time to the substitution of experts on remand. Yeah, I'm a little puzzled about that. That's an issue which would arise only at trial. It really doesn't have anything to do with the summary judgment motion. Am I correct about that? That's correct, but the problem is that the court said that it would exclude a substitute expert on remand and- I understand that. So it only comes up if you- Yes, Your Honor. Yes, Your Honor. And Mr. Kitty, or I'm sorry, all of the squire factors here would be met. Mr. Bennett has suffered a near fatal heart attack. He's now retired completely. Is there any evidence in the record that he's currently unable to serve as an expert? Yes, Your Honor, there is. There's a letter from him saying he doesn't want to anymore. There's also a doctor's note dated February 6th of 2023 saying he's in rehabilitation and recovery would last about three months. And then there is his letter of March 9th saying that he has retired completely. If that is an issue, if that is an issue that the court needs to explore, certainly the court could request more evidence of Mr. Bennett's condition. My understanding is that he is not doing well. Wasn't it incumbent on the client to submit evidence when you were asking the district court to substitute him as an expert? I mean, one view of what the district court was doing here is that they thought maybe your side didn't do so well in the deposition, so you were trying to get him out of the case. Isn't that within the district court's discretion to say, I think that's what's really going on here and we're not going to allow that? It is in general, Your Honor, and because of the doctor's note and because now circumstances have become even worse, to allow this case to go forward without an expert, and certainly my client would love to have Mr. Bennett come and testify. It would resolve a lot of things. But to even Weeks admits that experts are some of the most important witnesses at trial and credibility is key for a jury, so to allow this case to go forward only on cross-examination through deposition of Mr. Bennett would be highly prejudicial. I see I'm into my rebuttal time. Okay. We'll give you two minutes for rebuttal. Thank you, Your Honor. Thank you. Mr. Leachman? Good morning. May it please the court. My name's Michael Leachman. I'm counsel for the appellee, Weeks Marine. I'd like to start with Mudmaster since I understand many of your questions concern Mudmaster. And if I may, I'd like to start with the issue of the alleged waiver of the argument pertaining to the 1993 sale. Importantly, in the Statement of Uncontested Facts, in the original motion, the 1993 sale was raised. And fatally, Wilco identified it as an undisputed fact. What did you say about it in the motion for reconsideration? It was specifically addressed that the seismic decision was irrelevant to the 1993 sale, thus the parties were wasting a lot of ink dealing with this issue of does the 1993 instructions apply to the 1980 sale? Our position, even as early as the reply to the... My question is, did you raise this issue in the motion for reconsideration about the 1993 sale? Yes, Your Honor. Okay. Where did you do that? That would have been in Docket 162-1. The appendix citation is 2844-45. There is a chart, if I may, to explain how Weeks Marine approached the Mudmaster machine. Our position has always been that the Mudmaster machine is a prior art device and the model number AHP-250SM is the product. Our position has been there were at least three 102 triggering events. A 1980 sale, a 1981 showing at a trade show, and then a 1993 sale. So from the outset of this case, we have alleged the machine is the prior art device and there were three triggering 102 events. It's only Wilco that has decided to focus on the 1980 sale. So at the top of 2345, you have a section about 1993 offer for sale. That's where you raised that. Yes, Your Honor. And we also raised it in our Statement of Uncontested Facts and then in our reply brief in the original motion for summary judgment. We argued, first, Wilco does not dispute the existence of the 1993 sale or that the 1993 assembly instructions were provided to PSI Engineering. Thus, even under Wilco's reading of seismics, the 1993 assembly instructions are relevant for establishing the features of the Mudmaster unit sold in 1993. I don't know how much is clear. So recognizing that, I feel like some of the core of the argument opposing counsel makes is that you're kind of mixing and matching time period documents with respect to this Mudmaster and their different models. If you were to tell me your best 102, I understand you identified three potentially triggering events. Which is the best one of those dates in terms of being the most complete in terms of presenting either on sale bar or... The 1993 sale bar. Two main reasons. Number one, we have the 1993 assembly instructions that were admitted as a business record that were verified by Mr. Binkley as being a business record. And then, probably even more importantly, we have Binkley's testimony itself. Mr. Binkley testified that he... He was there during the 1993 sale. Correct. He testified, he was asked in his deposition, do you have any personal knowledge that that machine was delivered to PSI Engineering? This is the 1993 machine. Yes. Then he was asked, did you see that Mudmaster? Answer, I did. This is appendix 1825. So he testified that he actually saw this machine. Then he went on further and testified how the machine is put together. He testified about these cross members. He testified about what the training and support frame is and what it does. And so, we not only are relying upon assembly instructions to explain what constitutes the chassis of this machine, we're also relying upon an eyewitness that testified on behalf of the company that sold this device. And so, to answer your question, yes, the 1993 sale, to me, makes this case a lot easier. You do not have to get to the issues that appellants spent a lot of ink on, talking about the application of the 93 instructions to a 1980 machine. Even though... Are you relying on any undated documents for the 1993 sale? We have no undated documents to rely upon for the 1993 sale. We have... So, which sale? Is it the 1981 where they're potentially undated documents, or how did the undated documents fit into the picture? So, the arguments being raised by Wilco is that, so, if I may, let me back up. There were six Mudmaster machines of this particular model that were made. All six of them were made in the early 1980s. This was something that Mr. Binkley testified to, based upon the business records. You just happen to have one sold in 1980, another one shown at a trade show, and then another one sold in 1993. But these aren't separate machines. These are all the same model. They just happen to be sold over different time periods, and that's what Mr. Binkley's thought the assembly instructions was going to. Yes, the 93 assembly instructions were typed and made in 1993, but substantively, they would be substantially similar to what would have been with the 1980 machine. And Judge Barbier found that to be sufficiently... He also claims, though, he wouldn't have personal knowledge of that aspect, given the fact that he didn't join the company until, what, 1987? 1987. We believe, as a corporate representative, based upon his role as a vice president and having access and knowledge of the business records, he can testify to the reliability of that document being applicable to the 1980 sale. But again, I still do not believe that is an issue this court even has to reach. So why don't you address the chassis issue? So I think, for the moment, we can assume that Hudson testified there was a chassis. The question is, was that contradicted by Bennett, such as to raise a genuine issue of material fact? Yes, Your Honor. In Mr. Bennett's original expert report, he did say the words, I don't think it has a  But he never explained what it had. He never explained anything. It was a very conclusory opinion in his initial expert report. During false examination, during his deposition, though, that conclusory opinion really started showing its light. He was asked what possibly could support the machine if it didn't have a chassis. His answer was, based on my opinion, my expert opinion, as the good doctor said, there must be something there to support the pontoons. Remind me what page you're reading from. This is Appendix 2753. And then he was asked in his deposition, hypothetically, what could be used to support these two pontoons. He gave an example of a deck, and he gave an example of cross beams. In both instances, he said both of those would qualify as a chassis. Then we also have him testifying on looking at infringement, that the accused devices with cross members constitute a chassis. So when pressed about that contradiction, he ultimately answered, I don't know. He referred to the trunnion support frame as being magical. He ultimately gave what I consider to be a non-opinion. And so we're not even dealing with conflicting opinions, we're dealing with a non-opinion at the end of the day. And we have both Dr. Hudson and Mr. Binkley explaining exactly what these cross members do. So this court has found, and other appellate courts have found, when you have competing experts and an expert on one side merely gives a conclusory opinion, that's not sufficient to defeat summary judgment. Here we're not only giving a conclusory opinion, we're giving an opinion that conflicts with itself. What page can I find the magical testimony? Appendix 2748 through 2749. And I also have 2752. And I will also note that that testimony was given after Mr. Binkley had been deposed, or Mr. Binkley had explained in detail what the trunnion support frame actually does. Did you rely on Binkley's testimony to establish a chassis as well as Hudson's? It was cited in our briefs, but we relied principally on Dr. Hudson as the testifying expert on anticipation validity. But Mr. Binkley's deposition was cited throughout our briefs, as well as our appellate briefs. If I may move to the Zong reference, Zong also, in my view, is a rather straightforward reference for this court to consider. Mainly because there's no dispute that Zong possesses all the claim elements. There's no dispute that Zong has a chassis. There's no dispute that Zong has spuds. There's no dispute that Zong has a track system. The only argument raised by the appellants is lack of enablement. And the burden of proof on lack of enablement when you're dealing with the 102 reference is on the party that's raising it. Well, there's a question as to whether Zong's track enables it to move on water. I guess there seems to be a consensus that maybe it helps to do that, but it's not sufficient. So yes, your honor. That argument that the track system is not enabled to move on water is really not an enablement argument at all. It's a utility argument. And this court has long held that 102 does not require, under the guise of enablement, efficacy or performance levels. And so, Zong explicitly states that the paddles do function to move the device on water. It just states that it moves slow and that it has... Well, is it really that explicit? Where does the Zong statement say that? Yes, your honor. Appendix 4199 is the page citation. If I may, I can read you an excerpt. The excerpt is, the amphibious pontoon track type traveling mechanism moves forward in water by strokes of track paddles. And so, the reference is teaching that its track system does move it forward, it just moves it forward slowly. And I will note that even one of the accused devices, the REMU machine, which is one of the devices that have been accused of infringement, has an auxiliary propeller that functions in the same way to assist this machine to move more quickly or move in water when you have headwinds or things of that nature. I don't feel like I have the page. You said 4199? Yes. We don't. Our appendices don't have that page. It must be a typo. Yeah, my appendix stacks at 3636. 1500, I'm sorry. Okay. My apologies. It must be a typo in my notes. But, I still submit that the argument regarding Zong's track system is really a utility issue that does not in any way overcome a 102 application of the reference to the patent. And with regard to the suction pipe, so the Zong reference is also a dredging machine that uses a water suction pipe in addition to its bucket to dredge. So this water suction pipe can be placed in the water and you can mix water with mud and more easily get the dredged material to the shore. Wilco has taken the position, looking myopically at one figure, that the Zong reference is not enabled, that it couldn't move on land because of this pipe sticking below it. Our position has been and still is that a person skilled in the art is the viewpoint for the anticipation analysis and a person skilled in the art would not look at Zong and create a machine with a pipe sticking below it. And this was something that Mr. Bennett in his deposition ultimately agreed with. He admitted that a skilled artisan would know better than to do that and would know how to build the machine without the pipe sticking below it. Certainly doesn't rise to the level of undue experimentation. Their own witness testified that a skilled artisan would know how to make the machine where it didn't have the pipe dragging below the ground. Again, this is the burden of proof that the patentee had to show that it was not enabled. And they had to show that there was undue experimentation to make and use the prior art reference. What about the role of the sham affidavit doctrine in terms of the district court's analysis? Can you respond to that? Yes. So the sham affidavit doctrine applies in situations where you have a declaration or affidavit and sworn testimony that completely contradict. Both the Fifth Circuit as well as other circuit courts and this circuit court have recognized that when there's a complete contradiction, a party can't create a issue of fact by having a affidavit that has testimony that completely contradicts other testimony. Isn't the sham affidavit doctrine where you have record evidence and then to avoid summary judgment, somebody submits an affidavit after and the court says, well, that's just a sham to try to avoid summary judgment. Didn't this happen in the opposite order? It did. Is there any case that's ever applied the sham affidavit doctrine? We were not able to locate one, but the principles behind the sham affidavit doctrine seem to be even more applicable in this circumstance. The sham affidavit doctrine is built on sworn cross-examination deposition testimony being more reliable than an attorney-curated affidavit. And in this situation, we had the declaration in the form of expert report than the deposition testimony. And so, in our view, this case is even more, you know, prime for having the sham affidavit doctrine apply. In Bennett's declaration, does he explain anything relating to the deposition testimony? His declaration took place before the deposition. So there was no declaration after? There was no declaration after, Your Honor. And so if the court were concerned about the sham affidavit doctrine being applicable here, I would also point to the fact that the opinions in the declaration are conclusory in nature. And even on that ground, the court could find no genuine issue of material fact due to conclusory opinions that have no explanation. For instance, the mud master not having a chassis. There's no explanation anywhere what exactly it has. It's just a conclusory answer, just like any attorney could say, no. So you're contending that you could win with respect to these two other references without the sham affidavit doctrine applying? I believe so, yes, Your Honor. I do not believe that the patentee met their burden to show non-enablement. And the only opinions in the declaration were conclusory. OK. Unless there are further questions, I think we're out of time. Thank you. Thank you. Ms. Addy, you have two minutes. Thank you, Your Honor. First, the court never mentions the 1993 sale in its decision. We're here on summary judgment. And I want to revisit for a minute Hudson's testimony. Well, the fact that the district court didn't address the 1993 sale doesn't make that much difference, does it? It's not making findings of fact. We have the summary judgment record. We can affirm on a ground supported by the record, even if it wasn't addressed by the district court. Well, I believe the judge didn't think it was raised either. But regardless, if you look to- How do we- Where does the judge suggest it wasn't raised? He doesn't. He doesn't mention it. Your Honor, if you look to appendix 2845, which is their brief, where they say they argued the 1993 sale, they rely not just on the 1993 document. They rely also on a Mudmaster brochure that was three Mudmaster brochures and files that were undated that nobody could tell when they came from. And they rely on a 1983 document that's 13 years before and a 1996 document that is three years after the sale. There is no testimony connecting these documents. There is testimony that some of the documents are different models. So, turning back to Hudson's testimony, you asked me if it was sufficient to create a chassis. It's sufficient to create a genuine issue of fact, but we did argue that it was not sufficient to prove a chassis, just to create it, and that's in our brief at 43 through 46. One more thing, Your Honor. In claim one, for example, the chassis is specifically required to have two pontoons that are supported by the chassis. There is absolutely no testimony from Mr. Hudson that anything that he considers to be a chassis is supported, supports these pontoons. In fact, the pipes that are connected to the pontoons, there's no evidence that they are supporting the pontoons themselves. Okay, I think that's a good wrap-up. Thank you. Genuine issues of fact reign. Thank you, Your Honor. The case should be remanded. Thank both counsel. The case is submitted.